## WHARTON et al. v. FIRST NAT. CO. OF BIRMINGHAM.

### 6 Div. 693.

Supreme Court of Alabama.
May 30, 1935.

Crampton Harris, of Birmingham, for appellants.

Cabaniss & Johnston and Lucian D. Gardner, Jr., all of Birmingham, for appellee.

ANDERSON, Chief Justice.

The original bill of complaint, in so far as it seeks an avoidance of a multiplicity of suits, is defective. While some confusion, at one time, existed as to the essentials of a bill of peace, or one to prevent a multiplicity of suits, arising out of an apparent conflict between the cases of Turner v. City of Mobile, 135 Ala. 73, 33 So. 132, and Southern Steel Co. v. Hopkins, 157 Ala. 175, 47 So. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20, 16 Ann. Cas. 690, all confusion has been removed by the later cases of Roanoke Guano Co. v. Saunders, 173 Ala. 347, 56 So. 198, 35 L. R. A. (N. S.) 491, and Southern Steel Co. v. Hopkins, 174 Ala. 465, 57 So. 11, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692. For a citation of the cases and a full discussion, see Hamilton v. Ala. Power Co., 195 Ala. 438, 70 So. 737. At any rate, it is now settled that there must not only be a community of law and facts, but each person must have an interest in the suit of the others. We do not think that the present bill of complaint brings the respondents, the directors of the closed banks, within the rule, as each one became responsible for a separate and distinct amount, neither one liable for the obligation of the other, and their respective defenses to an action at law may be based on different law and facts. Each one may have a defense in no wise common to the others.

The case of Cleveland v. Ins. Co. of North America, 151 Ala. 191, 44 So. 37, is unlike the case at bar. There, the insurance company was sued by the insured, and several of his creditors sued him and garnished the insurance company, and the result of each claim was dependent upon the result of the suit of the policy.

While the bill of complaint, as amended, attempts to set up such a complication as to call for an equitable accounting, it fails to show a necessity therefor or to negative an adequate remedy at law for obtaining the object of the bill; that is, the collection of the amount promised by the respective directors of the closed banks growing out of their written obligation to become separately liable for $5,000 each. Conceding, only for a decision of this case, that their liability would depend on a failure of the assets of the closed banks to meet their liabilities, and if a defense at law should raise this issue, it might be that such a complication would arise as to make an equitable accounting necessary, but the bill charges a shortage of the assets and an obligation of the respondent directors to meet pro tanto this shortage to the extent of their respective guaranties. The bill does not charge that these directors are resisting payment because of no shortage of the assets or are questioning this complainant's creature, the new bank, in charging off the assets to meet obligations, as found by the new bank, is incorrect or improper. The bill does aver that the respondent directors have de-

clined to pay and have denied any liability upon their guaranty, but that is not the equivalent of charging that they are basing their nonliability upon the fact that there is no shortage in the assets or that the new bank has not properly administered the affairs of the closed banks and should be charged with assets improperly stricken or charged off or other facts which would render an equitable accounting necessary. Aught appearing, the defense or nonliability may be based on a ground not involving an accounting.

Moreover, it is questionable whether the respondent directors would have the right to question the sufficiency of the assets or the handling of same as a defense to an action for the sum of their guaranty, as section 5 of their obligation, Exhibit B to the bill of complaint, provides: "It is expressly agreed that the undersigned waive any right to have suit brought upon any item of indebtedness charged off or rejected for the purpose of determining the question of deficiency under said Principal Agreement, and agrees to make payments on call hereunder without respect thereto."

There is, of course, a provision in the main agreements providing for a distribution of the assets of the closed banks in case of an excess rnd for the reimbursement in whole or in part of these respondent directors for the sum paid by them upon call, but their obligation to pay upon call is in no wise dependent upon the handling of the assets of the closed banks.

In the case of Comer v. Birmingham News Co., 218 Ala. 360, 118 So. 806, 807, we did hold that, even where an account was on one side only, an equitable accounting may be had where there is such great complication in matter of accounts as to render remedies at law inadequate. There, however, the bill showed a necessity for an accounting, as it expressly charged that "the defendants deny liability in toto for many of said bills or accounts payable, exclusive of said prepaid subscriptions, and disagree with it as to the amount due on many others as to which they admit liability in some amount." Here no denial is charged to respondent directors of the correctness of the balance ascertained to be due after the deduction or exhaustion of the assets of the closed banks, even if such defense was available, which is very questionable, for the reason heretofore suggested.

The trial court erred in not sustaining the demurrer to the bill of complaint, and the de-

cree of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, BOULDIN, and FOSTER, JJ., concur.